Turley, J.
delivered the opinion of the court.
On the 23rd day of December, 1826, Robert Parish'by deed of that date, loaned to his daughter Jane, wife of Joseph Williams, two negro women, Kitty and Ailsy, during her natural life, but subject to his command at all times; but if he should permit them to remain with her till death, they were then to return to him and be at his disposition. On the 24th of March, 1827, the said Robert' Parish executed a deed to Peter N. Smith and Robert P. Currin, by which he conveyed to them a number of slaves, including the said Kitty and Ailsy, and other personal property in trust for the following purposes. 1st. For the payment of every just debt due by him, the said Robert Parish, to any and every individual; the same to be paid out of the negroes and other property conveyed. 2nd. For the competent livelihood and support of him, the said Robert, and his wife Elizabeth, for and during their lives, out of what might be left of said negroes and other property after the payment of the debts secured by the deed of trust; all of which was to be kept together for that purpose, with the exception of the above named negroes, Kitty and Ailsy: which, were to be permitted to remain in the possession of Jane Williams in pursuance of the deed of loan of the 23rd of December 1826, as a loan during her natural life, and at her death to be equally divided between her children, Robert, Wm. R. and John F. Williams.
R. P. Currin, one of the trustees, by writing on the deed of trust before its probate and registration, renounced the trust and declined its execution. Afterwards, to wit, at the July term 1827, of the county court of Williamson county, Peter N. Smith, the other trustee, caused the deed to be duly proven by the subscribing witness, and registered and took upon himself the execution of the trust; by virtue of which he sold all the properly conveyed by the deed of trust, except the *565 negroes Kitty and Ailsy: whether it were necessary to have done this or not in order to pay the debts, does not appear, nor whether the whole of the proceeds were appropriated by him to the payment of the debts, but it does appear that a portion of the debts secured by the deed were left unpaid.
Mrs. Jane Williams died in the year 1831; upon the happening of which event Peter N. Smith the trustee, took into possession the negroes, Kitty and Ailsy: and Lucinda and Albert, children of Kitty, born after the execution of the deed of trust. On the 6th day of September 1834, Kitty was sold by a constable of Williamson county, under an execution against Joseph Williams, and was purchased by James H, Otey at the price of $401, who has had her in possession ever since, claiming her as his own. After this sale, Peter N. Smith, the trustee, brought an action of trespass against the constable for selling the negro as the property of Joseph Williams, when she belonged to him under the deed of trust, and recovered a judgment in full against him for this trespass, which has been paid and satisfied with cost.
On the 20th day of September 1834, Peter N. Smith, as trustee, sold at public sale the other negroes, Ailsy, Lucinda and Albert, to C. D. Parish for a full and fair consideration, which was paid, and thereupon possession was taken of them, by him. On the 3d day of June 1836, C. D. Parish sold and delivered Lucinda to A. M. Whyte, and on the 29th day of December 1841, A. M. Whyte having previously died, Lucinda was sold at public sale by order of the chancery court of Williamson county, as a part of his estate, to B. Rupe, who aff terwards, to wit, on the 9th day of December 1842, sold and! delivered her to Susan A. Whyte, one of the .defendants to thjs bill. On the 31st of October 1839, C. D. Parish sold andd'e-. livered the other two slaves, Ailsy and Albert to B. S. Tappan,, which were afterwards levied upon as the property of Tappan, by the marshall of Middle Tennessee, by virtue of an execu *566 tion from the federal court at Nashville, and sold on the 12th of March 1840, and Albert was bought by defendant, Elisha Thompson, and Ailsy by Andrew B. Ewing, who afterwards, to wit, on the 14th day of October 1844, sold her to the other defendant, W. O. Perkins. Wm. R. Williams, one of the children of Jane Williams, died intestate in 1837, and has no personal representative. This bill was filed by Robert W. Williams on the 23rd day of January 1845, who at that time was' about twenty-four years of age, and John F. Williams, the other remaining child of Jane Williams, who was made a party to this suit by amended bill, was not twenty-one years of age at the time of filing the bill. This suit is brought by Robert W. Williams to recover from the possession of James H. Otey, Kitty and her increase; from Susan A. Whyte, Lucinda; from Elsha Thompson, Albert, and from W. O. Perkins, Ailsy. Out of this state of facts several legal propositions have been presented for the consideration of this court.
1st. Was Robert Parish by the terms of the deed of loan for Kitty and Ailsy, to his daughter, Jane Williams^ during her life, bearing date the 25th'of December 1826, prohibited from conveying the same negroes in trust for the payment of his debts, by the deed of the date of the 24th of March 1827?
We think not, because by the terms of the deed of loan, the negroes were held subject to his command at all times — that •is, he parted from no right or title to them by virtue of the deed, but loaned them during the life of his daughter, unless •he should think proper otherwise to dispose of them, which he ■.did by the deed of trust.
' 2nd. Did the refusal of R. P. Currin, one of the trustees, to •execute the trust, operate in law a disqualification on the part of Peter N. Smith, the other trustee, to prove the deed and fake upon himself the execution of the trust?
We think not. This is a question of authority and is well .settled. In the case of Roberson vs. Gaines et als. 2 Hump. Rep. *567 367, it was held by this court that it is a general principle of the common law that a mere naked power to sell, not coupled with an interest, given to séveral persons, must be executed by all, and does not survive; but when it is coupled with an interest, it may be executed by a survivor; that “when a testator directs his executor to sell lands for the benefit of creditors, or to do any act in which third persons are concerned, and who have the right to call on the executors to execute the power, such power survives:” that “when A and B were appointed executors, with authority to sell and convey land, and A qualified as executor, and acted as such, and sold and conveyed land, B not having qualified or acted, A’s deed passed the title though no renunciation or refusal was entered of record.” This case is direct to the point under consideration; the fact that it is a case of a devise to executors, can in no way vary it; the principle is the same, whether’the conveyance in trust be by deed or will, The same point is held by chancellor Wal-worth, in the case of Stephens, 3rd Paige’s Rep. 420, where he says, “by the common law, if a devise were to two upon trust, and one refused to accept the trust, it was a good devise to the trustee who did accept.” In Hill on Trusts, page 337, it is laid down that “a trustee who has disclaimed or renounced, or who has been duly discharged under a power contained in the trust instrument or by a decree of court, need not join in any sale or other disposition of the estate, or in receipts of trust monies; for a gift to several individuals nominatim upon trust, is a gift only to those who accept the trust, and they consequently take full power to perform all ministerial acts consequent upon the office.” 1st Ves. 9; 1st Vent. 128; 3 East, 410; 5 Mad. 435; 1st S. and Lf. 165. “But when a mere discretionary power, or one simply collateral, has been given to several persons expressly by name, all the individuals named must join in exercising it; and any act by those only who have accepted the trust, will not be a valid execution of the power. *568 1st Sug. on Powers, 138. In the case now under consideration, the trust is neither discretionary nor collateral, but positive and direct, and for the payment of debts.
3rd. Was the trustee, Peter N. Smith, authorized by law to sell the property conveyed by the deed of trust for the purpose of paying the debts due from Robert Parish, there being in the deed no express power to do so?
We think he was; the property was conveyed for the payment of the debts; this was the primary object of the-conveyance. This object could only be attained by a sale of the property; a right to sell then is implied, as the trust would fail without it; a right to sell, necessarily implies a right to convey, for without it no sale could be made, and the right to sell is coextensive with the property conveyed, if the sale of the whole of it be necessary for the payment of the debts intended to be secured.
4th. Is it necessary that it should be shown that there were existing debts requiring the , sale before the purchasers can be held tp have acquired a good title? We think not: the debts are not specified; a trust is reposed in the trustee by Robert Parish and the trustee is personally responsible to him or to those claiming through him for an abuse of the trust; but inasmuch as the power to sell is given by the deed, a lona Jide purchaser under it will be protected, though the trust be abused, and it follows as a necessary consequence, that the purchaser is not bound to see to the proper application of the purchase money.
5th. Did the judgment and satisfaction then which was had by Peter N. Smith, the trustee, for wrongfully selling under execution the negro Kitty to James H.’ Otey, one of .the defendants, operate to vest the title to said negro in him? We think it did: it is a well settled principle of law, that if the owner of personal property recover a judgment either in trespass or *569 trover against a wrong-doer thereto and obtain satisfaction, it confirms the title to the wrong-doer. Peter N. Smith was the legal owner of Kitty, under the deed of trust, and a satisfaction of his judgment against the constable, is as effectual to vest a title to her in James H. Otey as if he had recovered her in an action.
6th. Does the statute of limitations operate a bar to the complainant’s right to recover in the case? We think it does, notwithstanding John F. Williams, who is jointly interested with Robert W. Williams in the subject matter of controversy, and is a party to the suit, was under the age of twenty-one years, when the bill was filed; and this because Peter N. Smith, the trustee, was the legal owner of the negroes, and as such could bring an action for them against all wrong-doers; that having such right, the statute commenced running against him upon the adverse possession of the defendants, and he is barred by their adverse possession of three years; and whenever a trustee having the legal title, neglects to sue till he is barred by the statute of limitations, the cestui que trust is likewise barred, though an infant under twenty-one years of age. In the case of Wych vs. The East India Company, 3rd P. Will. 309, the lord chancellor held “that if an executor, administrator or trustee for an infant neglects to sue within six years, the statute of limitations shall bar the infant.” In the case of Lewellen vs. Macworth, 2d Equity Cases, Ab. 579, lord Hardwicke said “that the rule that the statute of limitations does not bar a trust estate, holds only as between cestui que trust and trustee, not between cestui que trust and trustee on one side, and strangers on the other, for that would make the statute of no force at all, because there is hardly any estate of consequence without such trust, and so the act would never take place. Therefore, when a cestui que trust and his trustee are both out of possession for tft time limited, the party in possession has a good bar against them both.” And in the *570 case of Hovenden vs. Lord Annesly, 2 Sch. and Lef. 629, Lord Redesdale said “a cestui que trust is always barred by length of time operating against the trustee. If the trustee does not enter, and the cestui que trust does not compel him to enter, as to the person claiming paramount the cestui que trust is barred.” In the case of Pentland vs. Stokes, 2 B. and B. 68, Lord Manners held “that if trustees appointed to protect the inheritance, neglect their duty and suffer an adverse possession for twenty years to be held, the statute of limitations is a bar to the cestui que. trust? But as a means of protection against a trustee’s neglect, a cestui que trust may file a bill against him and compel him to assert his legal right in time, when it is assailed by a stranger: per lord Thurlow in the case of Foly vs. Burnell, B. C. C. 277.
Then upon every point made, we are of opinion that the law is with the defendants, and affirm the decree of the chan-, cellor and dismiss the bill.